IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JOHN FITZGERALD LEGRAND. | Crim. Action No. CCB-10-052 |

## MEMORANDUM

John Fitzgerald Legrand is a sixty-year-old federal prisoner serving a 480-month sentence for his participation in a trio of armed robberies that took place in January 2008. Now pending is Mr. Legrand's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Mot., ECF 153. Mr. Legrand has spent over fourteen years (of his forty-year sentence) in prison and asks the court to reduce his sentence to time served. The government opposed the motion, Opp'n to Mot., ECF 158, and Mr. Legrand replied, Reply in Supp., ECF 163, and filed an additional supplement, Suppl. to Mot., ECF 172. No oral argument is necessary. *See* Local Rule 105.6. For the following reasons, the motion will be granted in part and denied in part. Mr. Legrand's sentence will be reduced to 258 months.

## BACKGROUND

On January 12, 2008, two armed assailants robbed a Baltimore, Maryland gas station. *United States v. Legrand*, 483 F. App'x 771, 772 (4th Cir. 2012) (unpublished). Nine days later, a single assailant robbed a Pizza Hut in Dover, Pennsylvania. *Id.* And two days after that, a single assailant robbed a Burger King just outside of Baltimore. *Id.* Police responded to the Burger King robbery and spotted a person matching a witness's description of the assailant entering the passenger seat of a nearby Jeep Liberty to flee. *Id.* An officer gave chase and eventually stopped the Jeep, but not before its passenger escaped on foot. *Id.* The officer arrested the Jeep's driver,

Errol Fulford. *Id.* Fulford is Mr. Legrand's nephew.[1] *Id.* Additional evidence pointed to Mr. Legrand's involvement in the robberies, and he was subsequently arrested. *Id.* After a period in state custody, Maryland dismissed the charges against Mr. Legrand in favor of a federal indictment, which followed shortly thereafter. *Id.* at 773.

Mr. Legrand was indicted on eleven counts; seven stemmed from the robberies (conspiracy to commit robbery (Count 1), 18 U.S.C. § 1951(a), two counts of Hobbs Act robbery (Counts 2 & 5), 18 U.S.C. § 1951(a), two counts of using a firearm in relation to a crime of violence (Counts 3 & 6), 18 U.S.C. § 924(c)(1), and two counts of possession of a firearm by a felon (Counts 4 & 7), 18 U.S.C. § 922(g)(1)), and four arose from Mr. Legrand's efforts to prevent damaging testimony against him (witness intimidation, retaliation, and tampering (Counts 8, 10, & 11), 18 U.S.C. §§ 1512(b)(1), 1512(b)(1)(3), 1513(b), and obstruction (Count 9), 18 U.S.C. § 1512(c)). Second Superseding Indictment, ECF 27. Mr. Legrand was convicted by a jury on all counts on July 6, 2010. Jury Verdict, ECF 70.

Mr. Legrand was sentenced on September 7, 2010, to 480 months' imprisonment. Judgment, ECF 78. The court imposed sentences of 96 months to run concurrently on Counts 1, 2, 4, 5, 7, 8, 9, 10, and 11, 84 months to run consecutively on Count 3 (the first Section 924(c)(1) Count), and 300 months to run consecutively on Count 6 (the second Section 924(c)(1) Count). *Id.* In sentencing Mr. Legrand, the court considered the following relevant facts of the offenses set forth in the presentence report. No physical injuries occurred during any of the robberies. *See*

---

[1] Fulford remained in Maryland custody, confessed to his participation in the robberies, pled guilty to accessory after the fact in the Burger King robbery, and was sentenced to five years' imprisonment. *Legrand*, 483 F. App'x at 773, 775; Trial Tr. vol. III at 10-12, ECF 93. Fulford testified against Mr. Legrand in exchange for federal immunity and a letter confirming his cooperation to the state authorities. *See* Trial Tr. vol. III at 11-14. Fulford's five-year sentence was "the least serious" charge he faced in his state proceeding. *Id.* at 148-49.

Presentence Report ¶¶ 8-21 ("PSR"). During the first robbery, both Mr. Legrand and Fulford entered the gas station and Fulford wielded the gun after Mr. Legrand gave it to him. *Id.* ¶ 8. Mr. Legrand subsequently took the primary role in robbing the Pizza Hut and Burger King and wielded the gun on both occasions; Fulford acted as the getaway driver. *Id.* ¶¶ 10, 15. During the police investigation of the robberies, Mr. Legrand called two people, a friend and his daughter, to ask them to lie to investigators if questioned. *Id.* ¶¶ 22-23. While speaking to his daughter, Mr. Legrand repeatedly threatened her mother. *Id.* ¶ 23.

In calculating Mr. Legrand's offense level, the PSR "grouped" Mr. Legrand's criminal acts pursuant to Sections 3D1.2(b) and 3D1.2(c) of the U.S. Sentencing Guidelines ("USSG"). *See* U.S. Sent'g Comm'n, Guidelines Manual (Nov. 2009). Counts 1, 2, and 4 were grouped together as Group I and carried a base offense level of 20. *Id.* ¶ 31. No adjustments were added. *Id.* ¶¶ 32-36. Counts 5 and 7 were grouped together as Group II and also carried a base offense level of 20. *Id.* ¶ 37. The Group II offense level was adjusted upwards by two points for reckless endangerment during flight because of the vehicle chase after Mr. Legrand's flight from the Burger King. *Id.* ¶ 41. Thus, the adjusted Group II offense level was 22. *Id.* ¶ 43. Counts 8, 9, 10, and 11 were grouped together as Group III and carried a base offense level of 14. *Id.* ¶ 44. The Group III offense level was adjusted upwards by eight points because it involved the threat of physical injury to a person in order to obstruct justice, resulting in a final offense level of 22. *Id.* ¶¶ 44, 49. The three Group offense levels were adjusted under USSG §3D1.4 for a final combined adjusted offense level of 25. *Id.* ¶¶ 50-56. The PSR then determined that Mr. Legrand had two prior felony convictions of crimes of violence, making him a career offender under USSG §4B1.1.[2] *Id.* ¶ 59; *see id.* ¶¶ 67-75.

---

[2] Without the career offender enhancement, Mr. Legrand had six criminal history points, establishing a criminal history category of III. PSR ¶ 74. Combined with the offense level of 25, the pre-career-offender guidelines range for the grouped offenses would have been 70-87 months.

3

Accordingly, his offense level was recalculated to 32, and his criminal history category was VI, establishing a guidelines sentence range of 210-262 months.[3] *Id.* ¶¶ 59, 61, 75.

As to Counts 3 and 6, at the time, Section 924(c)(1)(C)'s heightened mandatory minimums for "second or subsequent" Section 924(c)(1) offenses were applicable to multiple Section 924(c)(1) violations charged in a single prosecution, a practice known as "stacking." *United States v. McCoy*, 981 F.3d 271, 275 (4th Cir. 2020); *see Deal v. United States*, 508 U.S. 129 (1993). Thus, those statutes imposed minimum consecutive sentences of 84 months on Count 3 and 300 months on Count 6. PSR ¶¶ 62-63. The Section 924(c)(1) sentences were combined for 384 months and added to the otherwise applicable guidelines range of 210-262. *Id.* ¶¶ 64, 94 (citing USSG §4B1.1(c)). The resulting total guidelines range was therefore 594-646 months. *Id.* ¶ 64(2)(B).

The court accepted the guidelines range of 596-646 months and heard argument from the parties regarding the appropriate sentence. *See* Sentencing Tr. at 12, ECF 92. Considering the factors set forth in 18 U.S.C. § 3553(a), the court departed from the guidelines range and imposed a total sentence of 480 months. *Id.* at 62-64. The court's sentence reflects the imposition of a 96-month sentence for the non-Section 924(c)(1) offenses. *Id.* at 63.

Mr. Legrand appealed his conviction and the Fourth Circuit upheld the jury's verdict. *Legrand*, 483 F. App'x at 776-79. Mr. Legrand then moved for post-conviction relief under 28 U.S.C. § 2255. First Mot. to Vacate, ECF 116. The court denied his motion. First Mot. to Vacate Mem., ECF 132. But after the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015), the court appointed the Office of the Federal Public Defender to represent Mr. Legrand on

---

USSG Ch.5, Pt. A. Paired with the mandatory minimums, Mr. Legrand's final range would have been 454-471 months.

[3] The parties agree that Mr. Legrand's guidelines range was calculated correctly. *See* Mot. at 3-4; Opp'n at 14.

a successive Section 2255 motion to vacate. Order Appointing Counsel, ECF 143. The Fourth Circuit authorized Mr. Legrand to file a successive Section 2255 motion, and he did so. Order Granting Successive 2255, ECF 146; Second Mot. to Vacate, ECF 147. The court then held Mr. Legrand's motion in abeyance following the Fourth Circuit's en banc decision in *United States v. Simms*, 914 F.3d 229 (4th Cir. 2019) (en banc). Order Granting Abeyance, ECF 151. Mr. Legrand ultimately voluntarily dismissed his successive motion to vacate. Notice of Dismissal, ECF 171.

While his successive motion to vacate was pending, Mr. Legrand filed the instant motion for compassionate release, and the issue was fully briefed. Following the voluntary dismissal of his successive motion to vacate, Mr. Legrand requested a decision on the motion for compassionate release and reiterated his arguments with updated authority. *See* Suppl. to Mot., ECF 172. The government did not respond to Mr. Legrand's supplement.

## LEGAL STANDARD

In December 2018, Congress enacted the First Step Act. *See* Pub. L. No. 115-391, 132 Stat. 5194. As part of the Act, Congress amended 18 U.S.C. § 3582(c), which empowers courts to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i). Before the First Step Act was enacted, a court could review a prisoner's sentence pursuant to Section 3582(c)(1)(A) only "upon motion of the Director of the Bureau of Prisons" ("BOP"). *Id.* But under the amended statute, a court may conduct such a review also "upon motion of the defendant" if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if thirty days have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" *Id.*; *see United States v. Centeno-Morales*, 90 F.4th 274, 278-79 (4th Cir. 2024).

5

Evaluating a motion for compassionate release involves a two-step analysis. *Centeno-Morales*, 90 F.4th at 279. First, the defendant must show that "extraordinary and compelling reasons" warrant his release. *Id.* (citing *United States v. Hargrove*, 30 F.4th 189, 194-95 (4th Cir. 2022)); 18 U.S.C. § 3582(c)(1)(A)(i). If that burden is met, the court must then evaluate the sentencing factors set forth in 18 U.S.C. § 3553(a). *Centeno-Morales*, 90 F.4th at 279 (citing *Hargrove*, 30 F.4th at 195). Granting a motion for compassionate release is generally within the district court's discretion, and although the court must consider any new arguments raised for sentence modification, it "need not address in turn every argument raised by the movant." *Id.* At the Section 3553(a) stage, "district courts are presumed to have sufficiently considered the relevant factors in deciding a motion for compassionate release" unless the defendant rebuts that presumption. *Id.* (citing *United States v. High*, 997 F.3d 181, 190 (4th Cir. 2021)).

**ANALYSIS**

**I. Administrative Exhaustion**

On July 1, 2020, Mr. Legrand formally requested the warden of FCI Gilmer to file a motion for compassionate release on his behalf. Mot. Ex. 2, ECF 153-2. The request noted Mr. Legrand's health problems and the risk posed by COVID-19, but did not include any arguments related to the severity of his sentence and intervening changes in the law. *Id.* The warden denied Mr. Legrand's request on July 13, 2020. Mot. Ex. 3, ECF 153-3. The government argues that only the issues raised in Mr. Legrand's request to the warden (i.e. the health-related reasons) may properly be asserted in this motion for compassionate release.

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), "does not require issue exhaustion." *United States v. Ferguson*, 55 F.4th 262, 269 (4th Cir. 2022). Specifically, the Fourth Circuit in *Ferguson* explained that it is improper to "limit [a defendant's] motion for

6

compassionate release in the district court to only those grounds for compassionate release he identified in his request to the BOP." *Id.* at 268; *see United States v. Brown*, 78 F.4th 122, 130 (4th Cir. 2023) (affirming application of *Ferguson*). The government advanced its argument before *Ferguson* was decided. With the benefit of *Ferguson*, the court concludes (1) that Mr. Legrand satisfied Section 3582(c)(1)(A)'s exhaustion requirement by submitting his initial request for compassionate release to the warden and waiting thirty days after its receipt before filing his motion for compassionate release, *see United States v. Muhammad*, 16 F.4th 126, 130-31 (4th Cir. 2021) (explaining that Section 3582(c)(1)(A) exhaustion requirement is disjunctive and can be satisfied by waiting thirty days without fully exhausting all administrative rights to appeal), and (2) that Mr. Legrand is not limited to those issues raised in his request to the warden, *see Ferguson*, 55 F.4th at 269.

## II. Extraordinary and Compelling Reasons

Mr. Legrand's primary argument for compassionate release centers on a change in the law requiring mandatory minimum sentences for violations of Section 924(c)(1). He also raises arguments related to the difference between his sentence and Fulford's five years. Finally, he contends that the threat of COVID-19 presents a severe health risk to him because he is medically vulnerable. The court will consider each of these reasons independently before considering whether they collectively establish extraordinary and compelling reasons for compassionate release.

### A.     Change In Law

It is well established in this Circuit, and recent developments have confirmed, that a gross disparity between the sentence a defendant actually received pre-First Step Act and would have received post-First Step Act can be an "'extraordinary and compelling reason[]' for compassionate

7

release." *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020); *see* USSG §1B1.13(b)(6) (Nov. 2023); *United States v. Davis*, 99 F.4th 647, 654 (4th Cir. 2024) ("*Concepcion* [*v. United States*, 597 U.S. 481 (2022)] and the latest policy statement [(Section 1B1.13(b)(6))] serve to confirm and amplify this Court's earlier ruling [in *McCoy*].").

I have previously analyzed motions for compassionate release based on sentencing disparities by considering:

> (1) whether the sentence imposed is grossly disproportionate to a sentence the defendant would likely receive if sentenced today, signifying that the sentence is "dramatically longer than necessary or fair;" (2) whether the sentence imposed is unusually or grossly lengthy in comparison to sentences currently imposed for similar or more serious offenses; (3) the length of the sentence the defendant already has served; and (4) other personal characteristics of the defendant, which may include the defendant's relative youth at the time of the offense and their post-sentencing conduct in the BOP.

*United States v. Johnson*, No. 99-cr-0352-ELH, 2023 WL 7130950, at *16 (D. Md. Oct. 27, 2023) (quoting *United States v. Myers*, No. 01-cr-0188-CCB, 2021 WL 2401237, at *3 (D. Md. June 11, 2021)). This analysis is based on the Fourth Circuit's decision in *McCoy*. In *McCoy*, the Fourth Circuit noted that the compassionate release statutory framework restricted courts to considering extraordinary and compelling circumstances that were in concert with applicable policy statements from the Sentencing Commission. 981 F.3d at 280-81. However, because there were no policy statements contemplating a defendant-initiated compassionate release motion as authorized by the First Step Act, the Fourth Circuit determined that courts could consider any extraordinary and compelling justifications for release. *Id.* at 281-82, 284. The Sentencing Commission has since amended policy statement Section 1B1.13 to apply to defendant-initiated compassionate release motions, and the amended policy statement took effect in November 2023. USSG §1B1.13, p.s. (Nov. 2023); *see Davis*, 99 F.4th at 654-55. Therefore, I will consider whether this prior analytical framework is consistent with the updated and now-applicable policy statement.

A comparison of USSG §1B1.13(b)(6) and the analysis from *Johnson* and *Myers* confirms that they are consistent. Section 1B1.13(b)(6) establishes that an extraordinary and compelling circumstance exists when four factors are present: (1) the defendant "received an unusually long sentence"; (2) a change in the law "would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed"; (3) the defendant "has served at least 10 years of the term of imprisonment"; and (4) "full consideration of the defendant's individualized circumstances" supports finding extraordinary and compelling circumstances. USSG §1B1.13(b)(6). The first two factors of the analysis in *Johnson* and *Myers* directly relate to the questions of whether the defendant's sentence is "unusually" long and significantly different from modern sentences, the third factor relates (albeit with less specificity) to the requirement that a defendant have served at least 10 years of imprisonment, and the fourth factor requires consideration of the defendant's personal circumstances. Whether conducted through the *Myers* framework or directly under Section 1B1.13(b)(6), the analysis is substantially the same, and the court will analyze Mr. Legrand's sentencing disparity argument accordingly.

As part of the First Step Act, Congress revised Section 924(c)(1) to clarify that the heightened mandatory minimum for what was previously termed a "second or subsequent" Section 924(c)(1) offense should only apply to an offense "that occurs after a prior conviction under this subsection has become final." 18 U.S.C. § 924(c)(1)(C) (2018). This statutory change abrogated the prior practice of stacking Section 924(c)(1)(C)'s heightened mandatory minimum sentences for multiple violations in a single prosecution. *See United States v. Davis*, 588 U.S. 445, 450 n.1 (2019); *McCoy*, 981 F.3d at 275. Had Mr. Legrand been sentenced under the law as it presently stands, he would not have faced a 300-month mandatory minimum sentence, and instead would have received the 84-month mandatory minimum sentence for each Section 924(c)(1) offense, for

9

a total mandatory minimum sentence of 168 months (or fourteen years) and a total sentence of 264 months (without altering Mr. Legrand's sentence for the non-Section 924(c)(1) convictions). Mr. Legrand's actual and hypothetical sentences differ by 216 months, or eighteen years. In other words, without the stacked mandatory minimums, Mr. Legrand's sentence may have been almost half that which was imposed. In the court's view, a sentencing disparity of this magnitude supports finding that Mr. Legrand has met the "extraordinary and compelling reason" requirement. *McCoy*, 981 F.3d at 278, 285-86 (noting that 200-month disparity could be an "extraordinary and compelling reason"); *United States v. Ewing*, No. 18-cr-0142-RDB, 2023 WL 2185785, at *3 (D. Md. Feb. 23, 2023) (reasoning that guidelines range disparity of approximately 65 months was an "extraordinary and compelling reason"); *United States v. Howard*, No. 11-cr-0494-CCB, 2021 WL 5416950, at *3 (D. Md. Nov. 18, 2021) (highlighting the significance of a disparity of half the sentence); *see Myers*, 2021 WL 2401237, at *3 (contrasting as insufficient 14 percent disparity with disparities of 50 percent or more); *Davis*, 99 F.4th at 661 (noting that approximately 100-month disparity was "stark" and required district court consideration).

Consideration of the sentences currently imposed for similar or more serious offenses establishes another disparity. The average sentence imposed in this district from 2015 to 2023 where the primary sentencing guideline was USSG §2B3.1, Robbery, was 168 months for an individual classified as a career offender. U.S. Sent'g Comm'n, Interactive Data Analyzer, District of Maryland, 2015-2023, Guideline §2B3.1, Category VI, Career Offender Only, Average and Median Sentence Length, https://ida.ussc.gov/analytics/saw.dll?Dashboard. And specific cases reflect this sentencing practice. *United States v. Berry*, No. 20-cr-0360-ELH (D. Md. Sept. 10, 2021), ECF 76 (115-month sentence for defendant charged with three Hobbs Act robberies and a Section 924(c)(1) offense); *United States v. Shorb*, No. 17-cr-0548-MJG (D. Md. Apr. 18, 2018),

ECF 30 (100-month sentence for defendant charged with two Hobbs Act Robberies); *cf. United States v. Holloway*, No. 21-cr-0117-BAH (D. Md. Mar. 21, 2024), ECF 147 at 6 (168-month Rule 11(c)(1)(C) plea by defendant charged with three Hobbs Act robberies and a Section 924(c)(1) offense); *see also United States v. Ferebe*, No. 96-cr-0401-CCB, 2023 WL 6809707, at *3 (D. Md. Oct. 16, 2023) (describing recent sentences of less than 400 months for defendants convicted of murder). Adding Mr. Legrand's modern mandatory minimum of 168 months to this average produces a total of 336 months. Furthermore, as Judge Chuang has explained, "present practice in this District [is to] charge only a single [Section] 924(c) count" in a given prosecution. *United States v. King*, No. 05-cr-0203-TDC (D. Md. May 24, 2021), ECF 190 at 5. Eliminating one of Mr. Legrand's Section 924(c)(1) counts consistent with present charging practice would further reduce Mr. Legrand's hypothetical sentence to 252 months. Thus, today, the average defendant in Mr. Legrand's shoes would receive a sentence of twenty-one years—nineteen years (or 228 months) less than Mr. Legrand's forty-year sentence. This disparity is nearly identical to that calculated under the prior factor, and is therefore also significant and supports a conclusion that Mr. Legrand has shown extraordinary and compelling circumstances for compassionate release.

Mr. Legrand has served more than fourteen years of his forty-year sentence. *See* Suppl. to Mot. at 2 ("Mr. Legrand has been in continuous custody since March 4, 2010."). This term of imprisonment is well over the ten years required by USSG §1B1.13(b)(6), and is over one-third of Mr. Legrand's unusually long sentence.

Finally, the court considers Mr. Legrand's personal circumstances. Generally, in evaluating this factor, I have looked to the defendant's post-conviction conduct and factors that would suggest some reduced culpability and greater potential for rehabilitation at the time of the offense, such as youth. *Myers*, 2021 WL 2401237, at *4; *see Ferebe*, 2023 WL 6809707, at *4. Beginning with

Mr. Legrand's circumstances at the time of his offense, it is beyond dispute that his culpability was high. Mr. Legrand was forty-four years old when he committed the charged robberies, PSR at 2a, and he had previously been convicted of several other armed robberies, *id.* ¶¶ 68-73. Knowing that he was under investigation, Mr. Legrand obstructed justice by threatening witnesses and advising them to lie to the authorities. *Id.* ¶¶ 22-23. Such behavior cuts against finding extraordinary and compelling circumstances. Nevertheless, Mr. Legrand is now sixty years old, which suggests that he has a significantly lessened probability of recidivism. U.S. Sent'g Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* at 30 (December 2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf. Mr. Legrand suffers from several health problems including obesity, type-2 diabetes, back pain, GERD, and a hiatal hernia. Mot. Ex. 8, ECF 153-8; Mot. Ex. 12, ECF 153-12; Suppl. to Mot. Ex. 1 at 1-3, ECF 174-1. Thus, it is unlikely that Mr. Legrand, if released before serving his full forty-year sentence, would commit offenses similar to those for which he was convicted. Furthermore, while incarcerated, Mr. Legrand has exhibited generally good behavior, accruing only three minor disciplinary infractions over his fourteen years in prison, all of which occurred in an approximately four-month period early in his sentence. Mot. Ex. 19, ECF 153-19. He has also completed many vocational programs and, in 2019, earned his GED. Mot. Ex. 20, ECF 153-20. Although Mr. Legrand exhibited a propensity to commit dangerous crimes at the time of his offense and conviction, the court concludes it is unlikely that he will pose a risk to the public if released before serving the entirety of his forty-year sentence. Thus, consideration of his personal characteristics also weighs in favor of finding extraordinary and compelling circumstances.

Mr. Legrand has shown extraordinary and compelling circumstances warranting a reduction of his sentence based on a change in the law since his initial sentencing. The court will therefore proceed to consider the factors set forth in 18 U.S.C. § 3553(a) after reviewing Mr. Legrand's other bases for a reduction to determine whether they strengthen his case.

### B.    Sentencing Disparity Between Co-Conspirators

Mr. Legrand argues that the difference between his forty-year sentence and Fulford's five-year sentence further warrants a finding of extraordinary and compelling circumstances. In the court's view, this contention does not substantially supplement Mr. Legrand's change in the law argument. Although sentence disparities between co-defendants may support a finding of extraordinary and compelling circumstances, several factors justify a difference between Mr. Legrand's and Fulford's sentences. The PSR makes clear that Mr. Legrand introduced a firearm into the pair's robbery scheme, PSR ¶ 8, and wielded it in two of the three robberies, during both of which Fulford served only as a getaway driver, *id.* ¶¶ 10, 15. Fulford later confessed to his participation in the robberies, pled guilty to state charges, and testified at Mr. Legrand's trial. *Legrand*, 483 F. App'x at 773, 775; Trial Tr. vol. III at 10-12. Mr. Legrand threatened witnesses, obstructed justice, and proceeded to trial. PSR ¶¶ 22-23. Furthermore, the court notes that Fulford's state law conviction involved a different sentencing regime than Mr. Legrand's federal charges. *Myers*, 2021 WL 2401237, at *4. Although these factual differences may not justify a disparity of the magnitude created by Mr. Legrand's original sentence, given that the court will consider a reduction based on a change in the law, the disparity between Mr. Legrand's and Fulford's sentences does not significantly strengthen Mr. Legrand's argument.

### C. COVID-19

Mr. Legrand contends that his susceptibility to COVID-19 is an extraordinary and compelling circumstance. Courts in this circuit have recognized that the threat of COVID-19 infection remains relevant in finding extraordinary and compelling reasons for compassionate release, especially when a defendant's underlying medical conditions render him particularly susceptible to serious harm from contracting the virus. *See Davis*, 99 F.4th at 655-56; *United States v. Robinson*, No. 18-cr-017-ELH, 2024 WL 1994747, at *13-15 (D. Md. May 6, 2024). Mr. Legrand is obese and has type-2 diabetes. *See* Suppl. To Mot. Ex. 1. Although these medical conditions do increase Mr. Legrand's susceptibility to a severe case of COVID-19, *see* Opp'n at 41-43 (acknowledging that obesity and type-2 diabetes are COVID-19 risk factors) (citing Centers for Disease Control, *People with Certain Medical Conditions* (April 15, 2024), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html), Mr. Legrand refused to be vaccinated, and has not explained that refusal, Opp'n Ex. 1, ECF 158-1. Similar ailments to Mr. Legrand's have not met the extraordinary and compelling circumstances bar in this circuit, particularly when the defendant has refused vaccination without grounds. *See Davis*, 99 F.4th at 655-56 (affirming district court finding that type-2 diabetes and hypertension did not merit compassionate release); *United States v. Brown*, 78 F.4th 122, 128-29 (4th Cir. 2023) (obesity and high blood pressure did not merit compassionate release when defendant refused vaccination). Accordingly, the court concludes that Mr. Legrand's medical conditions and the threat of COVID-19 do not reach the level of an extraordinary and compelling circumstance.

**III. Sentencing Factors**

In modifying a defendant's sentence, the district court considers "the nature and circumstances of the offense and the history and characteristics of the defendant," the need for the sentence imposed to "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment," "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," along with "the kinds of sentences available," the sentencing guidelines, guidelines policy statements, "the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct," and "the need to provide restitution to any victims of the offense" "to the extent that they are applicable." 18 U.S.C. §§ 3553(a), 3582(c). Many of these factors were addressed in the court's sentencing disparity analysis, and the same conclusions are just as relevant in resentencing.

Without addressing every factor in turn, *see Centeno-Morales*, 90 F.4th at 279, a sentence of some severity is appropriate given Mr. Legrand's prior criminal history and the dangerous nature of the armed robberies at issue in this case. Yet developments in the law and in the general practice of this district make clear that the forty-year sentence imposed is far greater than necessary to effectively punish Mr. Legrand and deter similar conduct. Indeed, Mr. Legrand's original sentence creates disparities, rather than avoids them. Moreover, given Mr. Legrand's age and medical complications, the court does not regard him as a significant danger to the public if released before serving his full forty years.

In its disparity analysis, the court concluded that either (1) imposing both 84-month mandatory minimum sentences for the modern Section 924(c)(1) offenses along with the original

15

96-month non-Section 924(c)(1) sentence, or (2) imposing a single 84-month Section 924(c)(1) mandatory minimum sentence in accordance with modern charging practice along with a district-average sentence of 168-months for Mr. Legrand's other crimes would produce a sentence in the range of 21-22 years.[4] The court views such a sentence as "sufficient, but not greater than necessary," to satisfy the purposes of Section 3553(a). Accordingly, Mr. Legrand's sentence will be reduced to 258 months, or 21 and a half years.

## CONCLUSION

For the foregoing reasons, Mr. Legrand's motion for compassionate release will be granted in part and denied in part. His sentence will be reduced to a total of 258 months, followed by the originally imposed three-year term of supervised release. The associated motions to seal, ECFs 154 & 173, will be granted to protect the confidentiality of personal information. A separate Order follows.

\_\_\_6/11/2024\_\_\_  
Date

\_\_\_/s/_____  
Catherine C. Blake  
United States District Judge

---

[4] The court will achieve this result by reducing Mr. Legrand's sentence on Count 6 to 84 months and reducing his sentence on the non-Section 924(c)(1) Counts to 90 months.